**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE
MDD_TJSchambers@mdd.uscourts.gov

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

January 8, 2015

LETTER TO COUNSEL:

RE: *Jane Doe v. AE Outfitters Retail Co.*,
Case Number WDQ-14-0508

Dear Counsel:

This matter is before the Court on Defendant AE Outfitters Retail Company's ("AE") Motion to Strike Plaintiff's Rebuttal Expert Witness Disclosures ("Motion") (ECF No. 22).[1] Having considered the Motion, Plaintiff Jane Doe's ("Ms. Doe") response in opposition (ECF No. 25), and AE's reply (ECF No. 27), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the reasons set forth below, AE's Motion will be denied.

The deadlines for disclosures under Fed. R. Civ. P. 26(a)(2) in this case were as follows:

| | |
|---|---|
| September 11, 2014: | Plaintiff's Rule 26(a)(2) disclosures |
| October 9, 2014: | Defendant's Rule 26(a)(2) disclosures |
| October 23, 2014: | Plaintiff's rebuttal Rule 26(a)(2) disclosures |

(ECF No. 18.)

In her initial expert witness disclosures dated September 11, 2014, Ms. Doe designated Jack F. Dowling ("Mr. Dowling") as an expert in security,[2] and stated that he would testify consistent with his report "that the criminal invasion of privacy and sexual assault Plaintiff experienced was patently foreseeable. . . ." (ECF No. 22-2 at 4.) Ms. Doe also stated that Mr. Dowling would testify as to the lack of security provided by AE and that he "may also testify regarding opinions offered by Defendant's experts." (*Id.*) Ms. Doe's disclosure stated that she "reserve[d] the right to designate additional experts and/or to supplement this designation upon the completion of discovery." (*Id.* at 5.)

AE made its expert disclosures on October 9, 2014. (*See* ECF No. 22-3.) AE designated an expert in security, James McNamara ("Mr. McNamara"), and stated that, consistent with his report, he would testify that "the alleged invasion of privacy of Plaintiff was not reasonably

---

[1] This case has been referred to me for the resolution of discovery disputes and related scheduling matters. (ECF No. 26.)

[2] Ms. Doe also designated another expert witness, but that witness is not pertinent to this Motion. (*See* ECF No. 22-2 at 2-3.)

foreseeable," that AE's security was reasonable, and that AE's fitting rooms were "standard within the industry." (*Id.* at 2-3.) AE also designated Mat Sabella ("Mr. Sabella") as a "hybrid fact/expert witness" with expert opinions on "fitting room design in the retail clothing industry." (*Id.* at 3.) Finally, AE designated Scott McBride ("Mr. McBride") as a "hybrid fact/expert witness" in the field of loss prevention and security. AE did not provide expert reports for Mr. Sabella or Mr. McBride, but instead designated the experts' deposition transcripts as containing their expert opinions. (*Id.*)

Ms. Doe made her rebuttal expert disclosures on October 23, 2014.[3] (*See* ECF No. 22-4.) She designated Steven Stern ("Mr. Stern") "to testify in response to the opinions offered by Defendant's experts." (*Id*. at 3.) Specifically, Ms. Doe stated that Mr. Stern would state that the "photographing and/or videotaping [of] a customer in a fitting room equipped with a partial fitting room door was foreseeable." (*Id.*) In addition, Mr. Stern would testify that "there is a strong likelihood" that photographs or videos of Ms. Doe would be posted to the Internet. Finally, Mr. Stern would testify that the "costs associated with monitoring the Internet for such images" were high and that the removal of any images from the Internet is costly and difficult. (*Id.*)

In its Motion, AE seeks (1) a finding by the Court that Ms. Doe's disclosure was untimely, that the lateness is without substantial justification, and that the disclosure is prejudicial to AE; and (2) an order directing that Mr. Stern's opinions may not be offered as evidence. In support of this request, AE argues that the "issue of foreseeability is an element in Plaintiff's case in chief," and that Mr. Stern should have been designated as an expert on this issue in Ms. Doe's initial disclosures. (ECF No. 27 at 2.) AE maintains that Ms. Doe designated a different expert (Mr. Dowling) as to the issue of foreseeability and the designation of Mr. Stern to "present new or different opinions" on the same subject violates the scheduling order. (*Id.* at 3.) AE also argues that Mr. Stern's opinions about the likelihood of images being posted to the Internet, and the costs of monitoring for and removing such images, are "totally new opinions" concerning issues that were not "raised or discussed be Defendant's expert." (*Id.*)

Ms. Doe makes a number of arguments in opposition to AE's Motion. (*See* ECF No. 25.) Principally, Ms. Doe argues that even assuming that her rebuttal disclosures were untimely, AE has not been prejudiced. In addition, Ms. Doe contends that on the whole, her rebuttal disclosures respond to AE's expert disclosures. Finally, Ms. Doe notes that she expressly reserved the right to supplement her expert designations, and that this reservation was made in light of the parties' agreement to delay expert discovery and the supplementation of expert reports until the conclusion of fact discovery. (*Id.* at 3.)

I must first determine whether Mr. Stern's opinions constitute rebuttal evidence, or

[3] Ms. Doe noted in her rebuttal disclosures that she "expressly reserve[d] the right to designate additional experts and/or to supplement this Designation and Plaintiff's Rule 26(a)(2) Expert Disclosures as necessary based on the facts revealed in discovery and/or through any supplementation by Defendant." (*Id.*)

whether they are untimely initial disclosures. A rebuttal expert offers "evidence . . . intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). Mr. Stern expresses opinions on two issues. First, he has an opinion about the foreseeability of this incident. Second, he has an opinion about the costs of monitoring for and seeking the removal of any images of Ms. Doe from the Internet. I will address these opinions in turn.

The question of Mr. Stern's foreseeability opinion may be disposed of easily. AE designated three experts, at least one of which (Mr. McNamara) offered an opinion as to the issue of foreseeability. Mr. McNamara states that the invasion of Ms. Doe's privacy was not reasonably foreseeable because for the three years preceding the incident, "no similar crimes had occurred at the American Eagle Outfitter store, or in the entire York Galleria Mall." He also opines that the only "sexually motivated crimes" that happened at the York Galleria Mall were incidents of indecent exposure, which were factually dissimilar to this incident. (*See* ECF No. 22-3 at 8-10.) Mr. Sabella, who is designated as an expert in "fitting room design in the retail clothing industry," and Mr. McBride, who AE designated as an expert "in the field of loss prevention and security," did not submit expert reports. It is unclear whether either of the two have opinions about the issue of foreseeability.

To rebut Mr. McNamara's opinion that the invasion of Ms. Doe's privacy was unforeseeable, Ms. Doe offers the opinion of Mr. Stern. (ECF No. 22-4.) Mr. Stern states that contrary to Mr. McNamara's report, the issue of "fitting room voyeurism" has been documented in dozens of news stories across the country. In addition, Mr. Stern states that there are an "overwhelming number of public and paid websites dedicated to 'fitting room voyeurism' . . . on the Internet." (*Id.* at 10.) The last point Mr. Stern makes on the issue of foreseeability is that the gaps between the door and the floor and ceiling "allow[] readily available technology to slip under or over the door and into the dressing room stall" to film the person inside. (*Id.* at 11.) I find that these opinions are proper rebuttal opinions. Mr. McNamara based his opinion that this incident was not foreseeable on the lack of similar incidents around AE's store at this location. To rebut this opinion, Mr. Stern states that there have been numerous instances of similar incidents occurring at the dressing rooms of retail stores in the United States, some of which are posted on the Internet, and that AE should have foreseen that such an incident could occur at this location.

The problematic issue is Mr. Stern's opinion about the possibility of a video or image of Ms. Doe being uploaded to the Internet, and the difficulty and cost of monitoring for, and seeking the removal of, such an image. (*Id*. at 9-15.) This opinion does not rebut or contradict any of the opinions expressed by Mr. McNamara, Mr. Sabella, or Mr. McBride. AE's experts did not disclose opinions about the likelihood of images of Ms. Doe being posted to the Internet, thereby making it impossible for Mr. Stern's opinion to be proper rebuttal on this issue. I find that Mr. Stern's opinions are not rebuttal disclosures, but are more accurately characterized as untimely initial disclosures.

Having found that some of Mr. Stern's opinions are improper rebuttal expert disclosures

(or untimely initial expert disclosures), I must determine whether any sanction under Rule 37(c)(1) would be appropriate.[4] *See Southern States Rack and Fixture, Inc. v. Sherwin-Williams, Co.*, 318 F.3d 592, 595 (4th Cir. 2003). Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

*Id.*

Ms. Doe argues that even if the Court were to find that she failed to make timely rebuttal expert disclosures, the failure was both substantially justified and harmless. To determine whether Ms. Doe's untimely rebuttal disclosures were substantially justified or harmless, I am required to examine the factors set forth in *Southern States*.

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

318 F.3d at 597. *Southern States* noted that the first four of these factors relate to the issue of whether the untimely disclosure was substantially justified, and the final factor relates to whether it is harmless. *Id*.

Here, Ms. Doe does not argue that her untimely disclosures were substantially justified, but instead that the timing of her disclosures is not prejudicial to AE. I will nonetheless examine

---

[4] Some courts have held that Rule 16(f) is the controlling rule for the violation of expert disclosure obligations under a scheduling order. *See East West*, *LLC v. Rahman*, No. 11-1380, 2012 WL 4105129, at *6 (E.D. Va. Sept. 17, 2012); *Luma Corp*. *v. Stryker Corp.*, 22 F.R.D. 536, 541-44 (S.D.W. Va. 2005). Rule 16(f) provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." For this type of violation, the analysis is the same under both Rule 16(f) and Rule 37(c)(1).

each of the *Southern States* factors.

The first factor concerns any surprise to AE, and it is not a significant consideration. While AE was not aware at the time that it made its expert disclosures that Ms. Doe would be offering expert opinions that had not been disclosed, AE has not been taken by surprise. Dispositive motions are not due for several more months, and the trial in this matter has not been scheduled. The second factor (the ability to cure any surprise) weighs against AE because, as I will explain below, AE will be given an extension of time for it to make additional expert disclosures. This extension will act to cure any prejudice to AE from Ms. Doe's untimely disclosures. The third factor (the possibility of a disruption to the trial) is not significant because, unlike the facts in *Southern States*, the trial date in this case is not imminent. The fourth factor (the importance of the evidence) weighs against AE because the opinions that Ms. Doe disclosed may be important to her claim for damages.

While Ms. Doe does not rely on her late disclosures being substantially justified as a reason for the Court not to impose sanctions, some consideration of this factor is warranted. Ms. Doe explains that her rebuttal disclosures are based in the ambiguity of AE's disclosures. I am sympathetic to this argument, but still find that the fifth of the *Southern States* factors weighs against Ms. Doe. Ms. Doe notes her repeated reservation of the right to designate additional experts and opinions. When a party simply states in a disclosure that it "reserves the right" to make a further disclosure after the deadline, it frustrates the intent of the scheduling order. That is particularly true where, as here, the parties were apparently not in agreement about the timing of expert disclosures. The Court encourages parties to cooperate during the course of discovery and recognizes that sometimes this cooperation may mean agreeing to modifications of the strict deadlines of a scheduling order. Nonetheless, the Court expects parties to move to modify the scheduling order where a party has reason to believe that additional disclosures will be required after a deadline. *See* Fed. R. Civ. P. 16(b)(4). The purpose of a Court's scheduling order is not for the Court to micro-manage the parties' discovery efforts, but rather the opposite. A scheduling order provides deadlines for the parties to meet to ensure that a case progresses efficiently, and to prevent the Court from having to involve itself in routine scheduling disputes and problems arising from miscommunication between parties. *See generally Pennington Partners, LLC v. Midwest Steel Holding Co.*, 271 F.R.D. 462, 464 (D. Md. 2010). The Court relies on the parties to meet the deadlines set forth in a scheduling order, and to move to modify it where there is good cause to do so.

Having considered the *Southern States* factors, I find that Ms. Doe's late rebuttal disclosures stand to harm AE, but that the late disclosures are rendered harmless by a minor modification to the scheduling order, which is set forth below. AE's Motion is denied.

Ms. Doe's expert disclosures of October 23, 2014 will be considered to be initial Rule 26(a)(2) disclosures, and will not be stricken or excluded from evidence.[5] AE's deadline to make

---

[5] This Order does not preclude AE from seeking an evidentiary ruling from Judge Quarles that the opinions of Ms. Doe's expert witnesses are inadmissible on grounds not identified in the

its Rule 26(a)(2) disclosures is extended to January 28, 2015. Ms. Doe may make rebuttal disclosures under Rule 26(a)(2) on or before February 11, 2015. Supplemental disclosures and responses under Rule 26(e)(2) are due on or before February 18, 2015. All other deadlines in the scheduling order remain unchanged.

Despite the informal nature of this letter, it will constitute an Order of the Court and will be docketed accordingly.

Very truly yours,

/s/

Timothy J. Sullivan
United States Magistrate Judge

---

Motion.